1
2
3
4
5
6
7

FILED

14 OCT 15  PM 2: 39

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10  JACK HERNANDEZ, an individual,        CASE NO. 13cv2587-JM(KSC)
    and on behalf of all others similarly
11  situated,                             ORDER RE JOINT MOTION FOR
                                          DETERMINATION OF DISCOVERY
12                          Plaintiff,    DISPUTE
            vs.
13                                        [Doc. No. 26.]

14  BEST BUY CO., INC.,

15                          Defendant.

16

17          Before the Court is the parties' Joint Motion for Determination of Discovery

18  Dispute. [Doc. No. 26.]  In the Joint Motion, plaintiff seeks an order compelling

19  defendant to disclose contact information for putative class members prior to class

20  certification.   Plaintiff argues that defendant should provide him with contact

21  information for putative class members so he can gather information needed to present

22  to the District Court in a motion for class certification under Federal Rule of Civil

23  Procedure 23.  For the reasons outlined below, the Court finds that plaintiff's request

24  for an order compelling defendant to disclose contact information for putative class

25  members must be GRANTED subject to a protective order.

26                          ***Background***

27          In the operative Second Amended Complaint ("Complaint") plaintiff alleges that

28  he has been and is currently employed by defendant Best Buy Stores, L.P., as a store

1   manager in a salaried position at one of defendants Best Buy Mobile locations. [Doc.
2   No. 19, at p. 1.] In his class action Complaint, plaintiff alleges violations of California
3   Labor Code Sections 201, 202, 226.7(a), 500, 512, and 1194 *et seq.*; and California
4   Business and Professions Code Section 17200 *et seq.*  Plaintiff also seeks to recover
5   penalties under California Labor Code Sections 2698-2699 (known as the Private
6   Attorney General's Act or PAGA).

7        Plaintiff claims to represent the following class:

8
9            All California based salaried store manager employees who
             worked at any time during the four years preceding the filing
10           of this Complaint up until the date of class certification at
             any Best Buy Mobile stores in the State of California owned,
11           operated and/or acquired by defendant[].

12   [Doc. No 19, at p. 6.]

13        As a matter of uniform policy, plaintiff alleges that managers at Best Buy mobile
14   locations routinely work more than eight hours per day and more than 40 hours per
15   week. [Doc. No. 19, at p. 5.] Records of hours worked by these managers are not
16   maintained by defendant as a pattern and practice. [Doc. No. 19, at p. 8.] Plaintiff
17   believes that all managers at Best Buy Mobile locations should be classified as "non-
18   exempt" employees under California law. However, plaintiff claims that defendant has
19   a uniform policy that mis-classifies salaried  managers at Best Buy Mobile locations
20   as "exempt" or "executive" employees. [Doc. No. 19, at pp. 2-3, 5.] As a result of this
21   mis-classification, plaintiff claims that managers at Best Buy mobile locations are not
22   paid overtime and are deprived of mandated meal periods and rest breaks. [Doc. No.
23   19, at pp. 3, 5.]

24        Plaintiff alleges that managers at Best Buy mobile locations do not meet the
25   requirements for "exempt" employees under California law, because they regularly
26   spend more than 50 percent of their time performing non-exempt tasks and because
27   their work does not regularly involve discretion or independent judgment. [Doc. No.
28   19, at p. 6.] According to plaintiff, managers spend most of their time on non-exempt

1   tasks because of a consistent, uniform corporate policy of "inadequate staffing" at all

2   Best Buy mobile locations. [Doc. No. 19, at pp. 6-7.] As a result of this uniform

3   corporate policy of "inadequate staffing," plaintiff essentially alleges that managers

4   have no choice but to shoulder the responsibilities of "non-management" duties, such

5   as customer service and clerical work, and to work "far in excess of forty hours in a

6   week and/or eight hours in a day" without overtime compensation and rest or meal

7   periods. [Doc. No. 19, at p. 7.] Plaintiff claims that any variations in the duties and

8   responsibilities performed by managers from store to store or region to region are

9   legally insignificant to the issues presented in this action, because the "central fact"

10  remains that managers routinely spend more than 50 percent of their time on "non-

11  exempt" tasks because of a corporate policy of "inadequate staffing." [Doc. No. 19, at

12  pp. 6-7.]

13      The Complaint also includes general allegations that a class action is proper

14  under the circumstances because plaintiff's claims are typical of the class; class

15  members are numerous so that joinder would be impractical; and common questions

16  of fact and law are predominate in the action. Plaintiff believes a class action lawsuit

17  is the most efficient and appropriate means to redress the alleged wrongs and that the

18  prosecution of individual actions by each employee would place them at an

19  "unconscionable" disadvantage in relation to defendants' "superior financial and legal

20  resources." As further alleged in the Complaint, individual employees would be

21  discouraged from asserting lawful claims because of the costs involved and/or because

22  they fear retaliation or damage to their careers. [Doc. No. 19, at pp. 6-11.]

23                              ***Discussion***

24                    ***I.  The Parties' Discovery Dispute.***

25      Plaintiff's Interrogatory No. 1 requests the names, last known residence

26  addresses, telephone numbers, and cellular telephone numbers for all individuals who

27  fall within plaintiff's definition of the class. [Doc. No. 26, at p. 2.] Defendant objects

28  to this interrogatory on various grounds, including relevance and the privacy of

                                  - 3 -                          13cv2587-JM(KSC)

1  individuals who are not parties to the action. [Doc. No. 26, at pp. 2-3.] In addition,

2  citing the Ninth Circuit's decisions in *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th

3  Cir. 1985) and *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir.

4  1977), defendant argues in the Joint Motion that plaintiff is not entitled to contact

5  information for putative class members prior to class certification, because he is unable

6  to present *prima facie* evidence showing that he can meet the class action requirements

7  under Rule 23 or that the discovery he seeks is likely to substantiate his class

8  allegations. [Doc. No. 26, at pp. 5, 14.]

9      Even if plaintiff could present evidence to make the *prima facie* showing

10  discussed by the Ninth Circuit in *Mantolete v. Bolger*, 767 F.2d at 1424, and *Doninger*

11  *v. Pacific Northwest*, 564 F.2d at 1313, defendant contends that plaintiff is not entitled

12  to disclosure of contact information for ***all*** putative class members prior to class

13  certification.  According to defendant, plaintiff already has access to at least three

14  purported class members.  Defendant argues that access to three purposed class

15  members is enough for plaintiff to test his class allegations, and, in any event, courts

16  who allow this type of discovery usually limit it to a small "sampling" of putative class

17  members. [Doc. No. 26, at pp. 5, 17-18.]

18      Plaintiff asserts that he seeks contact information for putative class members

19  described in the Complaint so he can gather information that he believes is necessary

20  to meet his burden of proof on a motion for class certification. Citing Rule 23, plaintiff

21  contends he must show that certification of a class is appropriate because all claims by

22  members of the class "arise from a common course of conduct." [Doc. No. 26, at p. 9.]

23  Plaintiff also anticipates that defendant will attempt to defeat his motion for class

24  certification by arguing that liability can only be established on an individual-by-

25  individual basis, because the circumstances of each class member are unique. If he is

26  not allowed to communicate with members of the putative class, plaintiff argues that

27  he will not have a fair opportunity to oppose defendant's  argument that the issues

28  raised in his Complaint must be decided on an individual basis rather than in a class

action under Rule 23.[1]  Plaintiff believes he has made a *prima facie* showing of the prerequisites for a class action under Rule 23 based on the allegations in his Complaint and on defendant's responses to Special Interrogatories, which indicate that all members of the purported class were uniformly classified as exempt employees for the same specific reasons. [Doc. No. 26, at pp. 10-11; Doc. No. 26-1, Righetti Decl., Ex. 4, at pp. 24, 32.]

Defendant has indicated in response to written discovery that the putative class includes approximately 70 individuals at 30 stores in California. [Doc. No. 26-1, Righetti Decl., Ex. 4, at p. 34; Doc. No. 26, at p. 13.] According to plaintiff, it is simply not true that he already has access to the contact information for these individuals. Rather, plaintiff represents that he has been "on leave during the last year" and has only had contact with two putative class members. [Doc. No. 26, at pp. 11-12.]

## II.  *Scope of Discovery.*

The party seeking to compel discovery generally bears the burden of satisfying the relevance requirement of Rule 26(b). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  The scope of discovery under Rule 26(b) is broad: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).  However, a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit.  The party resisting discovery generally bears the burden to show that the discovery requested is irrelevant to the

---

[1]   In this regard, defendant has stated in response to plaintiff's Interrogatory No. 16 that the actual duties performed by putative class members "vary from manager to manager, as does the amount of time spent performing any particular duty or responsibility." [Doc. No. 26-1, at p. 15.] In response to Interrogatory No. 16, defendant also listed the duties performed by managers. [Doc. No. 26-1, at pp. 37-40.]

13cv2587-JM(KSC)

1  issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive.

2  *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (2010). Here, defendant does

3  not dispute the relevance of the contact information plaintiff seeks in response to

4  Interrogatory No. 1 as to all putative class members. Defendant merely objects to

5  disclosure of this information prior to class certification.

6  ### *III.  Discovery Related to Class Certification.*

7  Rule 23(d) provides District Courts with authority in class actions to "issue

8  orders that: . . . (C) impose conditions on the representative parties or on intervenors."

9  Fed.R.Civ.P. 23(d). For example, a District Court may enter a limiting order under

10  Rule 23(d) to prevent inappropriate or abusive communications with class members.

11  *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). However, in *Gulf Oil Co v. Bernard*, the

12  United States Supreme Court cautioned that "serious restraints" on communications

13  with potential class members "in the absence of a clear record and specific findings of

14  need" is an abuse of discretion. *Id.* at 103-104. "[T]he mere possibility of abuses does

15  not justify routine adoption of a communications ban that interferes with the formation

16  of a class or the prosecution of a class action in accordance with the [Federal] Rules."

17  *Id.* at 104. Here, defendant has presented no evidence to even suggest that contact

18  information for putative class members should be withheld to prevent inappropriate or

19  abusive communications.

20  As defendant contends, the Ninth Circuit has addressed the propriety of pre-

21  certification discovery in class action cases on several occasions. In *Doninger v.*

22  *Pacific Northwest Bell, Inc.*, 564 F.2d at 1304, the Ninth Circuit stated as follows:

23  "[W]here the plaintiffs fail to make even a *prima facie* showing of Rule 23's

24  prerequisites, . . . the burden is on the plaintiff to demonstrate that discovery measures

25  are likely to produce persuasive information substantiating the class action

26  allegations." *Id.* at 1313. The plaintiffs in *Doninger* argued that it was error to deny

27  their motion for class certification without allowing them the discovery they needed to

28  meet the class requirements in Rule 23. *Id.* at 1312. Under the particular facts at issue,

1   the Ninth Circuit concluded plaintiffs were unable to show that discovery was likely
2   to "produce persuasive information substantiating the class action allegations." *Id.*
3   The allegations in the plaintiffs' complaint were conclusory and merely mimic[ed] the
4   language of Rule 23 in a parallel fashion." *Id.* at p. 1309, 1312. Plaintiffs were unable
5   to present even minimal facts supporting their conclusory class action allegations. *Id.*
6   at 1313.   By contrast, defendants therein presented an un-controverted affidavit
7   showing that a substantial portion of potential class members would be unable to
8   participate in the case because they had voluntarily signed a waiver and accepted relief
9   under a consent decree in a prior related proceeding. As a result, plaintiffs would have
10  been unable to satisfy the numerosity requirement of Rule 23(a) even if discovery had
11  been allowed. *Id.* In addition, defendants presented evidence showing the class would
12  have been fragmented so there was no reasonable possibility plaintiff could satisfy the
13  additional commonality requirements in Rule 23(b) even if discovery had been
14  allowed. *Id.*

15         Similarly, the plaintiff in *Mantolete v. Bolger*, 767 F.2d at 1416, argued that
16  class action allegations were erroneously dismissed without the opportunity to conduct
17  "pertinent discovery." *Id.* at 1417, 1424. Citing *Doninger*, 565 F.2d at 1313, the Ninth
18  Circuit reiterated that "the plaintiff bears the burden of advancing a *prima facie*
19  showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied or that
20  discovery is likely to produce substantiation of the class allegations." *Id.* at 1424. The
21  plaintiff in *Mantolete* alleged she was unlawfully denied a job based on her physical
22  handicap. *Id.* at 1417. However, in support of her class allegations, the plaintiff only
23  produced two other similar complaints against the defendant. As a result, the Ninth
24  Circuit concluded there had been no abuse of discretion in denying "expanded
25  discovery." *Id.* at 1425.

26         The Ninth Circuit in *Mantolete v. Bolger*, 767 F.2d 1416, also noted that
27  "expanded discovery" was not necessary before dismissing the class allegations,
28  because it was apparent that applicable law would "necessitate an inquiry into the

1   individual's medical and work history" and other factors "bearing on the person's

2   fitness for a given position." *Id.* This need for a case-by-case determination would

3   defeat class treatment under Rule 23. *Id.* at 1425.

4         On the other hand, the Ninth Circuit in *Doninger v. Pacific Northwest Bell, Inc.*,

5   564 F.2d at 1304, acknowledged that "the failure to grant discovery before denying

6   class treatment is reversible error" under some circumstances. *Id.* at 1312. "'The

7   propriety of a class action cannot be determined in some cases without discovery, as

8   for example, where discovery is necessary to determine the existence of a class or set

9   of subclasses. To deny discovery in a case of that nature would be an abuse of

10  discretion. Where the necessary factual issues may be resolved without discovery, it

11  is not required. (footnotes omitted).'" *Id.* at 1312-1313. "[T]he better and more

12  advisable practice for a District Court to follow is to afford the litigants an opportunity

13  to present evidence as to whether a class action [is] maintainable." *Id.* at 1313. This

14  is especially the case "when the information is within the sole possession of the

15  defendant." *Id.*

16        More recently, in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942

17  (9th Cir. 2009), the Ninth Circuit stated that District Courts have broad discretion to

18  decide whether discovery should be permitted as part of the process of determining

19  whether a class should be certified. *Id.* at 942. Therein, the Ninth Circuit also

20  reiterated that: (1) "a party seeking class certification is not always entitled to discovery

21  on the class certification issue" but in some cases the propriety of a class action cannot

22  be determined without some discovery; (2) it is usually best for a District Court to

23  allow the litigants an opportunity to present evidence on the issue of class certification;

24  and (3) it is not an abuse of discretion to deny discovery where a plaintiff is unable to

25  make a *prima facie* showing of the class certification requirements in Rule 23. *Id.* To

26  summarize its position on discovery related to class certification, the Ninth Circuit in

27  *Vinole v. Countrywide*, 471 F.3d 935, said: "Our cases stand for the unremarkable

28

1  proposition that often the pleadings alone will not resolve the question of class
2  certification and that some discovery will be warranted." *Id.*

3  In *Nguyen v. Baxter Healthcare Corporation*, 275 F.R.D. 503 (C.D. Cal. 2011),
4  for example, the District Court concluded plaintiff had established a *prima facie* case
5  for class relief after surviving a motion to dismiss and alleging sufficient facts to state
6  "a plausible class-wide claim. . . ." *Id.* at 507. Plaintiff was therefore "entitled to
7  reasonable pre-certification discovery. *Id.*

8  ### *IV. Plaintiff's Burden on a Motion for Class Certification.*

9  As noted above, plaintiff has requested contact information for members of the
10  putative class so he can gather information that he believes is necessary to satisfy his
11  burden of proof on a motion for class certification. Plaintiff believes that putative class
12  members will be able to substantiate his allegations that there are issues common to the
13  class that "arise from a common course of conduct." [Doc. No. 26, at p. 9.] In addition,
14  plaintiff anticipates that members of the putative class will be able to provide
15  information to defeat defendant's contention that certification of a class is not
16  appropriate under Rule 23, because the facts and circumstances are unique to each
17  member of the putative class, so liability can only be determined on an individual basis.
18  [Doc. No. 26, at pp. 10-11.]

19  "Parties seeking class certification bear the burden of demonstrating that they
20  have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and
21  at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657
22  F.3d 970, 979-980 (9th Cir. 2011). "Rule 23(a) requires parties seeking class
23  certification to establish: (1) that the class is so large that joinder of all members is
24  impracticable (numerosity); (2) that there are one or more questions of law or fact
25  common to the class (commonality); (3) that the named parties' claims are typical of
26  the class (typicality); and (4) that the class representatives will fairly and adequately
27  protect the interests of other members of the class (adequacy of representation).
28  Fed.R.Civ.P. 23(a)." *Id.* at 980.

1    "The proposed class or subclass must also satisfy the requirements of one of the

2    sub-sections of Rule 23(b), 'which defines three different types of classes.' [Citation

3    omitted.]" *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).  Based on the arguments

4    in the Joint Motion, it is apparent that the parties' discovery dispute relates to

5    Rules 23(a)(2) and 23(b)(3), which both concern the existence of commonality of

6    factual and/or legal questions at issue in the case.  If the Rule 23(a) requirements have

7    been met, Rule 23(b)(3) allows a class action to be maintained if "the court finds that

8    the ***questions of law or fact common to class members predominate*** over any

9    questions affecting only individual members, and that a class action is superior to other

10   available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P.

11   23(b)(3)  (emphasis added).

12        As defendant contends, it is true that class claims "must depend upon a common

13   contention" and "[t]hat common contention . . . must be of such a nature that it is

14   capable of classwide resolution–which means that determination of its truth or falsity

15   will resolve an issue that is central to the validity of each one of the claims in one

16   stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  In some class

17   actions challenging the mis-classification of employees as "exempt," class certification

18   has been denied when the evidence demonstrated that individual differences in

19   employee duties would predominate over issues that could be determined on a class-

20   wide basis. *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Lit.*, 571 F.3d 953,

21   958-959 (9th Cir. 2009); *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947-949

22   (9th Cir. 2011); *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251-253 (C.D. Cal.

23   2006).  In these cases, the plaintiff employees generally relied too heavily on the

24   defendant employers' uniform policies and procedures or on a blanket exemption

25   policy with insufficient evidence to show there was common proof of mis-

26   classification.  Under these circumstances, the plaintiff employees were not able to

27   overcome the defendant employers' arguments that a class action was inappropriate

28   because common issues would not predominate in the action. The defendant employers

were able to show there was a lack of uniformity in job duties that was amendable to common proof. Because of individual differences, the defendant employers were able to show it would be necessary to examine the specific facts of each employee's employment situation to determine whether anyone was mis-classified as exempt. *Marlo v. United Parcel Service*, 639 F.3d at 948 (concluding that plaintiff could not meet his burden of proving predominance based on common proof of mis-classification by relying on centralized control, uniform policies and procedures, or a blanket exemption policy because this evidence could not show whether employees were mis-classified without examining the work actually performed by each individual); *In re Well Fargo*, 571 F.3d at 958-959 (agreeing that uniform exemption policy was "highly relevant" to the predominance analysis but did nothing to facilitate common proof on the otherwise individualized, "fact-intensive" issues into each potential plaintiff's employment situation).

In *Jimenez v. Domino's*, 238 F.R.D. at 241, for example, the plaintiffs alleged they were employed as general managers of defendant's restaurants but were mis-classified as "executive, administrative and professional employees" based on their job titles. As a result, they were considered exempt for purposes of overtime compensation and rest or meal period requirements. *Id.* at 246. Despite the job title of general manager, plaintiffs alleged they were primarily involved in performing non-exempt functions, such as pizza making and cleaning, and were only spending about 20 percent of their time on managerial duties. *Id.* As proof that common issues were predominate under Rule 23(b)(3), plaintiffs relied on general policies, such as common training and "a set of finite tasks performed by the general managers." *Id.* at 251. However, the District Court agreed with defendant that the predominate issue was not whether tasks performed by the general managers were managerial or not, but how much time each general manager spent on non-managerial tasks. *Id.* Based on the evidence presented, the resolution of this issue required an individual, fact-specific analysis, including the credibility of each general manager and consideration of the many variables that

1    affected the duties of each general manager at individual store locations. *Id.* at 251-253.

2    Under these circumstances, the District Court could not conclude that common

3    questions were predominate under Rule 23(b)(3). *Id.* at 252-253.

4          In other cases, however, class certification has been granted when plaintiffs were

5    able to present evidence to establish there was common proof of mis-classification.

6    *See, e.g., Sav-On Drug Stores, Inc. v. Superior Court of Los Angeles*, 34 Cal.4th 319,

7    327-331 (Cal. 2004); *Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 505-506 (N.D.

8    Cal. 2010); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489-490 (E.D.

9    Cal. 2006). In *Sav-On v. Superior Court*, 34 Cal.4th at 319, for example, plaintiffs

10   were salaried store managers who alleged they were uniformly classified as "exempt"

11   employees based solely on their titles and job descriptions with no reference to their

12   actual work. *Id.* at 324-325. Although the plaintiffs did rely to some extent on uniform

13   or standardized store operations or policies, they argued convincingly in their class

14   certification motion that there were a number of issues that could be shown by the use

15   of "common proof." *Id.* at p. 327-329. For example, plaintiffs argued that "common

16   proof" could demonstrate that each class member was deemed "exempt" based on his

17   or her job description rather than on any consideration of actual work performed; that

18   as of a certain date defendant reclassified managers from exempt to nonexempt without

19   changing their duties or job descriptions; that class members were not trained on the

20   difference between exempt and nonexempt work; and that most of the tasks actually

21   performed by class members were nonexempt by law. *Id.*

22         The plaintiffs in *Sav-On v. Superior Court*, 34 Cal.4th at 319, also presented

23   significant evidence that the predominant issue was whether the "reasonably definite

24   and finite list" of "specific tasks" that plaintiffs actually performed could be classified

25   as "exempt," and this issue could be resolved based on common proof. *Id.* at 330-331.

26   Defendant did argue that its liability, if any, could only be determined based on

27   "individual computations of how much time each class member actually spent working

28   on specific tasks." *Id.* at 328. However, the California Supreme Court concluded

1  plaintiffs presented enough evidence to establish that common issues would
2  predominate the case, even though it would eventually be necessary to calculate
3  damages individually. *Id.* at 332.

4    Under the circumstances presented, the Court finds that disclosure of contact
5  information for putative class members is justified based on the *prima facie* showing
6  made in the allegations of the operative Complaint and in other supporting information
7  submitted with the parties' Joint Motion suggesting there are grounds for seeking class
8  certification. The allegations in the operative Complaint are more than conclusory and
9  include facts relevant to the Rule 23(a) prerequisites of numerosity, commonality, and
10 typicality. In addition, the allegations in the Complaint include at least one theory that
11 could possibly satisfy one of the Rule 23(b) requirements (*i.e.*, that there are questions
12 of law or fact common to the class that predominate over issues that only affect
13 individual class members). In this regard, plaintiff's theory is that all managers at Best
14 Buy Mobile locations were mis-classified as "exempt" because of a uniform corporate
15 policy of "inadequate staffing." As a result of inadequate staffing, plaintiff alleges that
16 managers had no choice but to shoulder more than 50 percent of "non-management"
17 duties and to work in excess of 40 hours per week. [Doc. No. 19, at pp. 6-7.] Although
18 plaintiff has not shown that contacting putative class members is likely to substantiate
19 these allegations, it is unlikely he could make this showing without access to
20 information that is in the sole possession of defendant.

21   Defendant's interrogatory responses also support some of the important
22 allegations in the Complaint. For example, defendant has stated that plaintiff was
23 considered an "exempt salaried store manager" and was generally scheduled to work
24 a 10-hour shift. [Doc. No. 26-1, at p. 25.] Because defendant believes that plaintiff was
25 "properly classified" as an exempt employee for specific reasons, defendant has stated
26 that it did not track the hours he worked or the hours of other putative class members.
27 [Doc. No. 26-1, at pp. 27, 32.] In addition defendant's responses to plaintiff's
28 interrogatories indicate the purported class identified in the Complaint consists of about

70 individuals who are or were employed as general managers at Best Buy Mobile stores during the time period specified in the Complaint. [Doc. No. 26-1, at p. 34.] In response to plaintiff's interrogatories, defendant also provided a finite list of duties and responsibilities for general managers and stated its expectations about the actual duties that a general manager may perform or choose to delegate to others. [Doc. No. 26-1, at pp. 35-40.]

Based on this "*prima facie*" showing, plaintiff is entitled to test his class allegations to determine whether certification is feasible. He simply cannot do so under the circumstances without contacting other potential members of the class. His current access to approximately two other general managers out of at least 70 potential members of the class is not enough in light of the burden of proof he bears in presenting a class certification motion.  Therefore, the Court finds that plaintiff's request for an order compelling defendant to disclose contact information for putative class members must be GRANTED.

### V. *Protecting the Privacy of Non-Parties.*

If the Court orders disclosure of contact information for putative class members, defendant requests that their privacy be protected "through an opt-out notice procedure allowing them to object to the release of their personal information to plaintiff." [Doc. No. 26, at p. 5.] Plaintiff argues that an opt-out notification procedure is not necessary or required to protect the privacy of putative class members.  The parties have already stipulated to a Protective Order for the disclosure of sensitive or confidential information, and other courts have found that a standard protective order is enough to protect the privacy rights of putative class members. [Doc. No. 26, at p. 12.]

In the context of a class action, disclosure of basic contact information for putative class members is "common practice" and does not constitute a serious invasion of privacy, particularly when the Court determines they may possess relevant discoverable information about class certification issues and the other allegations in plaintiff's Complaint.  *Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011).

1   Defendant's request to protect the privacy of contact information of its employees or
2   former employees must therefore yield to plaintiff's need for this information to pursue
3   his theory of the case and to determine whether he can support a motion for class
4   certification.

5        The Court also agrees with plaintiff that an "opt-out" procedure is not necessary
6   under the circumstances.  As the California Court of Appeal declared in *Puerto v.*
7   *Superior Court*, 158 Cal.App.4th 1242 (Cal. App. 2008), an "opt-in notice unduly
8   hampers [plaintiffs] in conducting discovery to which they are entitled by erecting
9   obstacles that not only exceed the protections necessary to adequately guard the
10  privacy rights of the employees involved but also exceed the discovery protections
11  given by law to far more sensitive personal information." *Id.* at 1245. An "opt-out"
12  procedure would create the same obstacles to legitimate discovery.

13       The Federal Rules of Civil Procedure also support disclosure of contact
14  information for putative class members under the circumstances presented.  Rule
15  26(a)(1)(A)(i) requires a party to provide contact information for "each individual
16  likely to have discoverable information . . . that the disclosing party may use to support
17  its claims or defenses. . . ." Fed.R.Civ.P. 26(a)(1)(A)(i). Under the circumstances, the
18  Court would be justified in concluding that all putative class members fall within this
19  Rule.  In addition, as plaintiff points out, the parties have already agreed to a standard
20  protective order for disclosing confidential or sensitive information, and defendant has
21  not explained why this protective order would not be enough to protect the privacy of
22  putative class members.  Nor is there anything to indicate that disclosure of contact
23  information for putative class members would lead to discovery abuses. Therefore, the
24  Court finds that defendant's request for an "opt-out notice procedure" must be
25  DENIED.

26                           ***Conclusion***

27       Based on the foregoing, plaintiff's request for an order compelling defendant to
28  provide contact information for all putative class members is GRANTED. Defendant's

1   request for an "opt-out notice procedure" for the disclosure of this information is

2   DENIED. Defendant shall provide plaintiff with the names, last known residence

3   addresses, and last known telephone numbers of all individuals who fall within the

4   class defined in plaintiff's Complaint.   This information shall be designated

5   "confidential" or "highly confidential" under the Protective Order entered by the Court

6   on April 15, 2014. [Doc. No. 25.]   Defendant shall provide this information to

7   plaintiff's counsel *__no later than November 7, 2014__*.

8         IT IS ORDERED.

9   Date: _____, 2014

10

11

12         KAREN S. CRAWFORD
           United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28