FILED

2015 NOV 13 AM 9: 54

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ acc DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK HERNANDEZ, individually and on behalf of those similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>BEST BUY STORES, L.P., et al.,<br><br>                    Defendant. | Case No.: 13cv2587-JM(KSC)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS AND DISQUALIFICATION**<br><br>**[Doc. No. 45.]** |

Before the Court are: (1) defendant's Motion for Contempt Sanctions and Disqualification [Doc. No. 45]; (2) plaintiff's Opposition to defendant's Motion [Doc. No. 49]; (3) defendant's Reply thereto [Doc. No. 52]; and (4) plaintiff's Objection to Evidence Submitted with defendant's Reply [Doc. No. 53]. In the Motion, defendant contends that the Court should impose various sanctions and disqualify plaintiff's counsel, because contact information for putative class members was allegedly used by plaintiff's counsel in a manner that violated this Court's prior Orders and California Rule of Professional Conduct 1-400. [Doc. No. 45-1, at p. 2.] For the reasons outlined below, the Court finds that defendant's Motion must be DENIED.

/ / /

/ / /

## I.    *Background.*

In the operative Second Amended Complaint ("Complaint") plaintiff alleges he was employed by defendant Best Buy Stores, L.P., as a store manager in a salaried position at one of defendant's Best Buy Mobile locations. [Doc. No. 19, at p. 1.] The main allegation in plaintiff's Complaint is that general managers at Best Buy Mobile locations routinely work more than eight hours per day and more than 40 hours per week without overtime pay and mandated meal and rest periods because they are misclassified as "exempt" employees under California law. [Doc. No. 19, at pp. 3, 5.] Plaintiff alleges that managers at Best Buy Mobile locations do not meet the requirements for "exempt" employees under California law, because they regularly spend more than 50 percent of their time performing non-exempt tasks and because their work does not regularly involve discretion or independent judgment. [Doc. No. 19, at p. 6.] According to plaintiff, managers spend most of their time on non-exempt tasks because of a consistent, uniform corporate policy of "inadequate staffing" at all Best Buy Mobile locations. [Doc. No. 19, at pp. 6-7.]

## II.    *Procedural History.*

In a Joint Motion for Determination of Discovery Dispute, plaintiff requested an order compelling defendant to disclose contact information for putative class members prior to class certification. [Doc. No. 26.] In an Order filed on October 15, 2014, this Court granted plaintiff's request. [Doc. No. 32, at p. 15-16.] In granting the request, the Court noted that disclosure of basic contact information for putative class members is "common practice" in the context of a class action, particularly when they may possess relevant, discoverable information. [Doc. No. 32, at 14-15.] In addition, the Court concluded as follows: "[P]laintiff is entitled to test his class allegations to determine whether certification is feasible. He simply cannot do so under the circumstances without contacting other potential members of the class. His current access to approximately two other general managers out of at least 70 potential members of the class is not enough in light of the burden of proof he bears in presenting a class certification motion." [Doc.

No. 32, at p. 14.]  Although defendant requested an "opt-out notice procedure" to protect the privacy of putative class members, the Court concluded such a procedure was unnecessary under the circumstances and in light of the stipulated Protective Order that was already in place to facilitate the exchange of confidential or sensitive information. [Doc. No. 32, at p. 15.]  Defendant was ordered to provide plaintiff with contact information for members of the putative class subject to the stipulated Protective Order of April 15, 2014, which was entered to govern the exchange of confidential information between the parties.  [Doc. No. 32, at p. 16; Doc. No. 25.]  Pursuant to the Court's Order of October 15, 2014, contact information for the putative class would have been provided to plaintiff's counsel on or about November 7, 2014.  [Doc. No. 32, at pp. 15-16.]

In an Amended Scheduling Order filed on October 27, 2014, the Court extended the time for filing a motion for class certification to March 23, 2015.  [Doc. No. 35, at p. 2.]  In a Second Amended Scheduling Order filed on February 18, 2015, the Court extended this deadline once again to April 6, 2015 because the parties had difficulty in scheduling certain depositions to complete class discovery.  [Doc. No. 39, at p. 1-3.]

Plaintiff did not file a motion for class certification by the April 6, 2015 deadline. Instead, on March 26, 2015, plaintiff filed a Motion for Permissive Joinder Pursuant to Federal Rule 20 and a Motion to Dismiss Class Claims without Prejudice.  [Doc. No. 40.] In these Motions, plaintiff sought to join "identical claims" on behalf of 30 individuals who are members of the putative class and to dismiss the class action allegations "without prejudice" as to absent class members.  [Doc. 40-2, at p. 2.]  Defendant opposed the Motion on various grounds, including plaintiff's alleged misuse of contact information for members of the putative class.  [Doc. No. 41.]

Next, on May 15, 2015, defendant filed the instant Motion for Contempt Sanctions and Disqualification.  [Doc. No. 45.]  As noted above, the grounds for defendant's Motion are that plaintiff's counsel violated two of this Court's Orders and the California Rules of Professional Conduct when he allegedly misused contact information for putative class members after receiving this information from defendant during discovery.

[Doc. No. 45-1, at pp. 6-18.] The Motion is supported by the April 27, 2015 Declaration of Scott Chapman, who is currently employed by defendant as a General Manager of a Best Buy Mobile location. [Doc. No. 45-3, at p. 2.] Based on his title, it is apparent that Mr. Chapman is a member of the putative class. [Doc. No. 45-3, at p. 2; Doc. No. 19, at p. 6.] Essentially, Mr. Chapman's Declaration states that he received unsolicited telephone calls and written communications from an attorney about a lawsuit against defendant. [Doc. No. 45-3, at p. 2.]

On May 18, 2015, plaintiff's counsel served Mr. Chapman with a Subpoena to Testify at a Deposition on May 26, 2015. [Doc. No. 49-1, at pp. 6-7.] Plaintiff's counsel wanted to "cross examine" Mr. Chapman about "factual statements" in his Declaration to present to the Court with his Opposition to defendant's Motion for Contempt Sanctions and Disqualification. [Doc. No. 47, at pp. 2-8.] On May 21, 2015, defendant filed an Ex Parte Motion for a Protective Order seeking to preclude Mr. Chapman's deposition for timeliness and other reasons unless defendant was permitted to take reciprocal discovery. [Doc. No. 46, at 2-9.] However, on May 22, 2015, this Court quashed the subpoena and stayed discovery in the case until pending motions were resolved. [Doc. No. 48.]

On June 8, 2015, the District Court denied without prejudice plaintiff's Motion for Permissive Joinder and Motion to Dismiss. [Doc. No. 51, at pp. 1-3.] The District Court's Order allows plaintiff to refile the Motion for Joinder and Motion to Dismiss depending on the outcome of this Court's resolution of the instant Motion for Contempt Sanctions and Disqualification. [Doc. No. 51, at pp. 2-3.]

### III. *Discussion.*

Defendant contends that plaintiff's counsel did not use contact information for putative class members for its intended purpose -- to allow plaintiff to gather information in support of a motion for class certification. Instead, defendant argues there is evidence to show plaintiff's counsel contacted members of the putative class to improperly solicit new clients to join this action as additional plaintiffs. According to defendant, these contacts with putative class members violated Rule 1-400 of the California Rules of

Professional Conduct and were in "direct contradiction" of two of this Court's prior Orders. [Doc. No. 45-1.]

### A. *Court's Authority to Impose Sanctions and Disqualify Counsel*.

Defendant's Motion for Sanctions and Disqualification argues that the Court should "remedy the damage" or prejudice caused by plaintiff's alleged improper contacts with putative class members by imposing the following sanctions: (1) contempt of court; (2) dismissal of any plaintiffs other than the current named plaintiff; (3) monetary sanctions; and (4) disqualification of plaintiff's counsel. If the Court does not disqualify plaintiff's counsel, defendant requests additional discovery "to determine whether counsel, in fact, improperly used contact information to telephonically solicit clients." [Doc. No. 45-1, at p. 7, 11.]

"District judges have an arsenal of sanctions they can impose for unethical behavior. These sanctions include monetary sanctions, contempt, and the disqualification of counsel." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). Federal Courts have inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). In this regard, appropriate sanctions may be imposed by Federal Courts for "bad-faith conduct or willful disobedience of a court's orders." *Id.* at 46-47. However, the Court's "inherent powers must be exercised with restraint and discretion." *Id.* at 44.

Federals Courts may also impose the "harsh sanction of dismissal" when the misconduct at issue was willful or in bad faith and is related to the "matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.' [Citations omitted.]" *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995). "Before imposing the harsh sanction of dismissal," the Ninth Circuit has held that a District Court must weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy

favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

"Where there exists (1) a clear violation of the professional rules of conduct, (2) which affects the public view of the judicial system or the integrity of the court, and (3) which is serious enough to outweigh the parties' interests in counsel of their choice, a court may disqualify an attorney from representing a party." *Kalinauskas v. Wong*, 808 F. Supp. 1469, 1472 (D. Nev. 1992), citing *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985). Since there is a significant cost to clients and the judicial system from misuse for tactical purposes, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.' [Citation omitted.]" *Id.* at 1050. To be justified, disqualification must be based on concerns of impropriety that "are indeed present" and "not merely anticipatory and speculative." *In re Coordinated Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981).

### B. *Alleged Violations of the Court's Prior Orders*.

Defendant argues that sanctions should be imposed because contacts by plaintiff's counsel with members of the putative class violated two prior Orders of this Court: (1) the Protective Order filed on April 15, 2014, as stipulated by the parties, to govern the exchange of confidential documents and information between the parties; and (2) the Court's Order re Joint Motion for Determination of Discovery Dispute filed on October 15, 2014 compelling defendant to provide plaintiff with contact information for putative class members.[1] [Doc. No. 45-1, at p. 6-12.]

/ / /

---

[1] Based on its contention that plaintiff's counsel violated the Court's prior Orders, defendant also argues that it is entitled under Federal Rule 37(b)(2)(C) to reimbursement of a portion of the attorney's fees it incurred in bringing the instant Motion. [Doc. No. 45-1, at p. 17.] However, Federal Rule 37(b)(2)(C) does not apply under the circumstances presented, as defendant does not allege plaintiff's counsel failed "to obey an order to provide or permit discovery. . . ." Fed.R.Civ.P. 37(b)(2)(A).

1        *1.*      ***Protective Order of April 15, 2014.***

2        The Protective Order filed in this case on April 15, 2014 to govern the exchange of

3    confidential documents and information between the parties states in part as follows:

4    "The parties acknowledge that they will be requesting and exchanging documents and

5    information solely because they are parties to the Litigation and therefore ***agree that all***

6    ***material exchanged between them will be used only for purposes of and in connection***

7    ***with prosecuting or defending this Litigation and/or alternative dispute resolution***

8    ***efforts between the parties hereto and for no other purpose.***" [Doc. No. 25, at p. 2

9    (emphasis added).]

10        Essentially, defendant argues that plaintiff's counsel violated the above-quoted

11    provision of the Protective Order by filing the combined Motion for Permissive Joinder

12    Pursuant to Federal Rule 20 and corresponding Motion to Dismiss Class Claims without

13    Prejudice. [6-8; Doc. No. 40.] Apparently, defendant's view is that "this Litigation" can

14    only mean this case as it is currently configured in the operative Complaint (*i.e.*, as a

15    class action by plaintiff as "an individual and on behalf of all other similarly situated"

16    [Doc. No. 19, at p. 1-2]). In other words, defendant argues that the term "this Litigation"

17    cannot include the proposed changes to the action that were presented to the Court in

18    plaintiff's combined Motion for Permissive Joinder Pursuant to Federal Rule 20 and

19    corresponding Motion to Dismiss Class Claims without Prejudice [Doc. No 40].

20        Without expressing any view as to whether the District Court should permit the

21    joinder of parties or the dismissal of class allegations as plaintiff has proposed, the Court

22    finds that defendant has interpreted "this Litigation" much too narrowly and in a manner

23    that is inconsistent with the Federal Rules of Civil Procedure. The Federal Rules allow

24    parties in a civil action to move the Court to request permissive joinder (Fed.R.Civ.P. 20)

25    and/or to voluntarily dismiss class or other claims (Fed.R.Civ.P. 41(a)(2)). As is, the

26    limitation in the April 15, 2014 Protective Order on the use of materials exchanged

27    during discovery simply cannot be read to preclude the use of a particular procedural

28    device generally permitted in civil actions under the Federal Rules. Nor would this Court

enter a Protective Order that specifically purported to impose such a limitation, particularly when it could be dispositive of a claim or claims.

## 2. *Discovery Order of October 15, 2014*.

In a Joint Motion for Determination of Discovery Dispute, plaintiff sought an order requiring defendant to provide contact information "for all individuals who fall within plaintiff's definition of the class." [Doc. No. 26, at p. 2.] Plaintiff argued that he would be prejudiced in his ability "to prepare for class certification" unless he had the same access as defendant to members of the purported class. [Doc. No. 26, at p. 3.] Plaintiff also argued as follows: "The ability to communicate with witnesses, specifically those who would fall within the alleged class, is essential if plaintiff is going to be given a fair opportunity to disprove [defendants' arguments opposing class certification]." [Doc. No. 26, at pp. 9-10.]

As noted above, the Court's Order of October 15, 2014 directed defendant to provide plaintiff with the requested contact information for members of the putative class. In granting the request, the Court noted that disclosure of basic contact information for putative class members is "common practice" in the context of a class action, particularly when they may possess relevant, discoverable information. [Doc. No. 32, at 14-15.] In addition, the Court concluded as follows: *"[P]laintiff is entitled to test his class allegations to determine whether certification is feasible.* He simply cannot do so under the circumstances without contacting other potential members of the class. His current access to approximately two other general managers out of at least 70 potential members of the class is not enough in light of the burden of proof he bears in presenting a class certification motion." [Doc. No. 32, at p. 14 (emphasis added).]

Although the Court did not anticipate that plaintiff's counsel would decide not pursue class certification but instead seek dismissal of the class allegations and the joinder of additional plaintiffs, the Court did not specifically prohibit him from following this course. Instead, the Court permitted plaintiff's counsel wide latitude to gather information from members of the putative class to "test his class allegations" and

determine "whether certification is feasible." [Doc. No. 35, at p. 14.] Contrary to defendant's view of the October 15, 2014 Order, the Court did not intend to limit the options available to plaintiff if it was determined based on information discovered from members of the putative class that moving for class certification was not "feasible," for whatever reason. [Doc. No. 35, at p. 14.] Therefore, it is the Court's view that plaintiff's counsel did not violate the Court's Order of October 15, 2014 simply because he decided not to pursue class certification but to instead request permissive joinder of additional plaintiffs and dismissal of the class allegations.

### C.    *Pre-Certification Communications with Putative Class Members*.

"Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil v. Bernard*, 452 U.S. 89, 99 (1981). Examples of problems or abuse include communications that "misrepresent the status or effect of the pending action" or have the "potential for confusion." *Gulf Oil*, 452 U.S. 99-100 n.12. Improper solicitation of class members can also be a cause for concern. *Id.*

An order that effectively places a "complete ban" on communications between counsel and members of a putative class has First Amendment implications and can result in "serious restraints on expression." *Gulf Oil*, 452 U.S. at 95-10. However, a District Court may enter a limiting order to prevent inappropriate or abusive communications with class members if it is "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. In this regard, Federal Rule 23(d)(1) provides District Courts with authority in class actions to "issue orders that: . . . impose conditions on the representative parties or on intervenors." Fed.R.Civ.P. 23(d)(1)(C). However, "the mere possibility of abuse does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." *Gulf Oil*, 452 U.S. at 104. Once potential abuses are identified, the Supreme Court stated that any weighing or balancing of the interests

9

1  involved "should result in a carefully drawn order that limits speech as little as possible,

2  consistent with the rights of the parties under the circumstances." *Id.* at 102.

3       In sum, "[b]oth parties need to be able to communicate with putative class

4  members—if only to engage in discovery regarding issues relevant to class

5  certification—from the earliest stages of class litigation." *Austen v. Catterton Partners*

6  *V, LP*, 831 F. Supp. 2d 559, 567 (D. Conn. 2011). "District courts thus must not interfere

7  with any party's ability to communicate freely with putative class members, unless there

8  is a specific reason to believe that such interference is necessary." *Id.*

9       *D.   **Constitutional Standards on Solicitation***.

10       "[T]ruthful advertising of 'routine' legal services is protected by the First and

11  Fourteenth Amendments against blanket prohibition by a State." *Ohralik v. Ohio State*

12  *Bar Ass'n*, 436 U.S. 447, 448-449 (1978). For example, in *Shapero v. Kentucky Bar*

13  *Association*, 486 U.S. 466 (1988), the United States Supreme Court held it would not be

14  "consistent with the First and Fourteenth Amendments, [to] categorically prohibit

15  lawyers from soliciting legal business for pecuniary gain by sending truthful and non-

16  deceptive letters to potential clients known to face particular legal problems." *Id.* at 458,

17  472.

18       On the other hand, the First Amendment does not protect direct, for profit, in-

19  person solicitation of clients by an attorney "under circumstances likely to pose dangers

20  that the state has a right to prevent." *Id.* at 449. In this regard, a State may prohibit such

21  direct contacts because it has a legitimate interest in "preventing those aspects of

22  solicitation that involve fraud, undue influence, intimidation, overreaching, and other

23  forms of 'vexatious conduct.'" *Id.* at 462. In reaching this conclusion, the United States

24  Supreme Court reasoned that "the potential for overreaching is significantly greater when

25  a lawyer, a professional trained in the art of persuasion, personally solicits an

26  unsophisticated, injured, or distressed lay person." *Id.* at 465.

27  / / /

28  / / /

13cv2587-JM(KSC)

***E.*** ***California Rules of Professional Conduct Concerning Solicitation***.

"The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). "Every member of the bar of this court and any attorney permitted to practice in this court must be familiar with and comply with the standards of professional conduct required of members of the State Bar of California." CivLR 83.4(b). In other words, the California Rules of Professional Conduct govern the conduct of attorneys practicing before this Court.

In pertinent part, California Rule of Professional Conduct 1-400(C) states as follows:

> A solicitation shall not be made by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, ***unless the solicitation is protected from abridgment by the Constitution of the United States*** or by the Constitution of the State of California. A solicitation to a former or present client in the discharge of a member's or law firm's professional duties is not prohibited.

Cal. Rules Prof. Conduct, Rule 1-400(C) (emphasis added).

"Solicitation" is defined as "any communication: (1) Concerning the availability for professional employment of a member or a law firm in which a significant motive is pecuniary gain; and (2) Which is: (a) delivered in person or by telephone; or (b) directed by any means to a person known to the sender to be represented by counsel in a matter which is a subject of the communication." Cal. Rules Prof. Conduct, Rule 1-400(B)(1)&(2). "Communication" is broadly defined as "any message or offer made by or on behalf of a member concerning the availability for professional employment of a member or a law firm directed to any former, present, or prospective client. . . ." Cal. Rules Prof. Conduct Rule 1-400(A).

Rule 1-400 does allow for written solicitation but provides that any such solicitation "shall not":

11

(A)   Contain any untrue statement; or

(B)   Contain any matter, or present or arrange any matter in a manner or format which is false, deceptive, or which tends to confuse, deceive, or mislead the public; or

(C)   Omit to state any fact necessary to make the statements made, in the light of circumstances under which they are made, not misleading to the public; or

(D)   Fail to indicate clearly, expressly, or by context, that it is a communication or solicitation, as the case may be; or

(E)   Be transmitted in any manner which involves intrusion, coercion, duress, compulsion, intimidation, threats, or vexatious or harassing conduct.

Cal. Rules Prof. Conduct, Rule 1-400(D).[2]

An attorney who directly contacts individuals for legitimate investigative reasons is not barred from representing those individuals if requested to do so.  However, "it is misconduct to directly solicit such employment." *Rose v. State Bar*, 49 Cal.3d 646, 659 (1989). *See also Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 339 (N.D. Cal. 2010) (concluding there was insufficient evidence to conclude class counsel engaged in any impropriety when defense counsel claimed class counsel sent an investigator "door-to-door" to recruit homeowners to serve as class representatives but class counsel responded that homeowners were approached as part of their investigation and not part of a solicitation effort).

///

---

[2] California law also provides as follows: "No advertisement shall contain any false, misleading, or deceptive statement or omit to state any fact necessary to make the statements made in light of circumstances under which they are made, not false, misleading, or deceptive." Cal. Bus. & Prof. Code § 6157.1.

Under California law "parties are free to communicate with potential class members before class certification . . ." without prior approval of the Court. *Parris v. Superior Court*, 109 Cal.App.4th 285, 297-300 (2003). "When engaging in pre-certification communications, as is equally true with any communication with a prospective client, a member of the State Bar of California must comply with the requirements of rule 1-400 of the Rules of Professional Conduct and abide by its prohibitions on false, misleading and deceptive messages or face possible disciplinary action." *Id.* at 298 n.6. Similar to this case, *Parris* was a class action lawsuit alleging violations of wage and hour laws. *Id.* at 290. The California Court of Appeal concluded the written notice and informational website prepared by plaintiff's counsel to educate putative class members about the lawsuit were not prohibited by Rule 1-400 because they were not delivered in person or by telephone. *Id.*

The California Court of Appeal in *Parris* also concluded plaintiff's counsel did not need prior approval of the court to send a written notice to putative class members prior to certification. The written notice provided putative class members with basic information about the lawsuit and stated that counsel wished to gather information about the nature of their work and their hours, but they were under no obligation to contact plaintiffs' counsel or to discuss the matter with defense counsel or any supervisor or manager. *Id.* at 291. The notice also informed putative class members that their employer could not retaliate against them for refusing to provide information and that further information about the lawsuit was available to them on a website set up by plaintiff's counsel. *Id.*

**F.     *Class Contacts*.**

**1.     *Declaration of Scott Chapman*.**

In support of the Motion for Contempt Sanctions and Disqualification, defendant submitted the Declaration of Scott Chapman. Mr. Chapman has been employed by defendant since October 2010 and is a member of the putative class. [Doc. No. 45-3, at p. 2.] Mr. Chapman's Declaration states that he received a letter "a few months ago"

13

from a lawyer who was suing defendant. According to Mr. Chapman, the letter included a formula "to calculate the value of an overtime claim against [defendant]." [Doc. No. 45-3, at p. 2.] He did not respond to the letter. [Doc. No. 45-3, at p. 2.] Mr. Chapman did not submit a copy of the letter with his Declaration. However, according to defense counsel, Mr. Chapman later located a letter dated March 4, 2015 from plaintiff's counsel. Defense counsel then provided the Court with a copy of the letter as an exhibit to defendant's Reply to plaintiff's Opposition. [Doc. No. 52-1, at p. 2, 6-7 (Exhibit A).]

Even though he did not respond to the above-described letter, Mr. Chapman's Declaration states that he received a telephone call from the lawyer sometime after receiving the letter. During this telephone call, Mr. Chapman claims as follows:

> 4.  . . . [T]he lawyer told me that the lawsuit was no longer a class action. Instead the lawyer said that he was representing any General Manager who wanted to file their own overtime claim against [defendant]. The lawyer gave me a deadline to join the lawsuit, and said that I would need to sign a retainer agreement to join the lawsuit. The lawyer listed names of other General Managers who would be making such claims, and said that a settlement with [defendant] could be with individual General Managers or as a group. He also told me that he was the only lawyer allowed to do this case and he could go after anyone for payment if they sought legal help outside of him. This felt weird to me because I never sought him out, and he called me with the solicitation of legal services for something that was no longer a class action.
>
> 5.  Although I never initiated any communication with the lawyer or requested any further contact, I received additional letters and many more telephone calls from the lawyer before the deadline he gave me to join the lawsuit, which game me the impression that he was an ambulance chaser.

[Doc. No. 45-3, at pp. 2-3.]

Plaintiff's Opposition argues that Mr. Chapman's Declaration is not credible for many reasons. [Doc. No. 49, at pp. 5-7, 10-11.] In this Court's view, there are a number of valid credibility concerns with Mr. Chapman's Declaration. First, Mr. Chapman's Declaration does not identify "the lawyer" he says he spoke with even though he claims to have received "many" telephone calls. [Doc. No. 45-3, at pp. 2-3.] If he received

13cv2587-JM(KSC)

"many" telephone calls that he believed were inappropriate or even threatening, it is simply incredulous that he did not obtain or even attempt to obtain any identifying information from the caller or callers. Attached to Mr. Chapman's Declaration is an e-mail addressed to defendant's Human Resources Manager dated March 27, 2015. [Doc. No. 45-3, at p. 5 (Exhibit A).] In the e-mail, Mr. Chapman states that he simply let "many" telephone calls "go to voicemail." [Doc. No. 45-3, at p. 5.] However, his Declaration is silent as to whether "the lawyer" or anyone else left him a voicemail about the case that included any identifying information. [Doc. No. 45-3, at pp. 2-3, 5.]

Second, Mr. Chapman's Declaration lacks important details. For example, Mr. Chapman's Declaration does not include the dates and times of the "many" telephone calls he allegedly received. Nor does Mr. Chapman provide any detail about the "deadline" he claims the lawyer gave him "to join the lawsuit." [Doc. No. 45-3, at p. 2.] Without the ability to recall or provide important details such as these, the Court must question the accuracy of the other details of his alleged telephone contacts with "the lawyer" that Mr. Chapman is unable to identify.

Third, Mr. Chapman states that the lawyer who called him listed the names of other General Managers who would be making claims against defendant, but his Declaration does not reveal any of those names. [Doc. No. 45-3, at p. 2.] The e-mail attached to Mr. Chapman's Declaration only includes the name of one individual who "the lawyer" said would be testifying against defendant. [Doc. No. 45-3, at p. 5.] These statements suggest Mr. Chapman did not have an accurate recollection of his telephone conversation with "the lawyer" that he is unable to identify.

Third, without more, it is unclear whether the statements in Mr. Chapman's Declaration are free of bias or coercion. *See, e.g.*, *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (stating in the context of a wage and hour class action that "[t]he case law nearly universally observes that employer-employee contact is particularly prone to coercion").

/ / /

1          **2.**    ***Declaration of Plaintiff's Counsel.***

2       In Opposition to defendant's Motion for Sanctions and Disqualification, plaintiff

3 submitted a Declaration by Attorney Michael Righetti. Mr. Righetti represents plaintiff

4 and has been "the primary attorney working on this case." [Doc. No. 49-1, at p. 2.] In

5 his Declaration, Mr. Righetti flatly denies having the conversation described in

6 Mr. Chapman's Declaration, because he states he "did not have the conversation

7 described by Mr. Chapman with *anyone*." [Doc. No. 49-1, at p. 2 (emphasis in original).]

8 Mr. Righetti also represents in his Declaration that he "was the only attorney [from his

9 firm] who spoke with putative class members in this case." [Doc. No. 49-1, at p. 3.]

10       Other key representations in Mr. Righetti's Declaration include the following:

11         2.   . . . After receiving the identities and contact information from

12     defendant pursuant to the Court's discovery order, I used that information
for the purpose set forth in the order -- contacting class members to discuss

13 the issues pertaining to class certification. Where putative class members in
this case requested more information about how to pursue a claim (some

14 did and some did not) then I provided that information to them. When
making contact with putative class members, the attorneys at Righetti

15 Glugoski, P.C., including myself, always inform the individual that if s/he
does not wish to be contacted regarding the matter then we will respect that

16 wish. We keep a record of those requests -- and we kept a record of such
requests in this case. Our records show that Mr. Chapman never requested,

17 verbally or in writing that we refrain in the future from providing him with

18 updates and information regarding this case. If he had, I would have made

19 a record of that request and refrained from contacting him about this case.

20 Generally speaking, I did not keep records of conversations I had with any
putative class members, and I have no recollection of having a conversation

21 specifically with Mr. Chapman.

22

23         3.     I never told *anyone* that I was representing 'any General

24 Manager who wanted to file their own overtime claim against Best Buy.' I
never told *anyone* that this case 'was no longer a class action.' I never told

25 *anyone* that I was 'the only lawyer allowed to do this case and I could go
after anyone for payment if they sought legal help outside of me.' I never

26 gave *anyone* 'a deadline to join the lawsuit.' I never called *anyone* and

27 offered legal services in connection with an overtime claim against

28 [defendant]; however, I had – and continue to have – discussions (*pro bono*)

with [defendant's] general managers who have questions *vis a vis* the procedural posture of this lawsuit and whether/how they can make a claim for wages (with or without an attorney and with or without going to court). Those kinds of discussions are standard in this law practice that specializes in advising employees about their rights and those types of discussions with employees regularly take place. Discussions with employees, including those who work or worked [for defendant] have never involved solicitations.

[Doc. No. 49-1, at pp. 2-3 (emphasis in original).]

Defendant's Reply attacks Mr. Righetti's Declaration on numerous grounds and contends Mr. Righetti is "hiding the ball," because he does not disclose exactly how he used the contact information for putative class members. [Doc. No. 52, at pp. 3-5.] While the Court agrees that Mr. Righetti's Declaration lacks some foundational details, he does directly and forcefully dispute the statement of facts made in Mr. Chapman's Declaration, and, as outlined above, the Court also has some credibility concerns with Mr. Chapman's Declaration.

"Due process requires a district court to resolve relevant factual disputes--allowing discovery and holding an evidentiary hearing if necessary" before imposing drastic sanctions, such as contempt or dismissal. *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). *See also Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, (9th Cir. 1983) (stating that "the district court may hold an evidentiary hearing on a motion for sanctions" as this method "best determines the appropriate sanctions while protecting a party's due process rights").

Given the credibility concerns, the Court questions whether the statements included in Mr. Chapman's Declaration could withstand closer scrutiny in a deposition or cross-examination at an evidentiary hearing. Since the evidence submitted is weak and a number of material facts are disputed, the Court is left with only a "mere possibility of abuse." *Gulf Oil*, 452 U.S. at 104.

/ / /

/ / /

### 3. *March 4, 2015 "Follow Up" Letter to Mr. Chapman*.

Along with the Reply, defendant submitted one additional piece of evidence. In a Supplemental Declaration, defense counsel represents that Mr. Chapman "was able to locate one of the letters he received from [plaintiff's] counsel," and a copy of this letter is attached to counsel's Declaration as Exhibit A. [Doc. No. 52, at p. 3; Doc. No. 52-1, at pp. 5-7 (Exhibit A).] Plaintiff understandably filed an Objection to this evidence because it was submitted for the first time with defendant's Reply.[3] Plaintiff argues that the Court should not consider the letter without giving plaintiff the opportunity to respond and to depose Mr. Chapman. [Doc. No. 53.] However, in this Court's view, an additional response and a deposition are not necessary because Mr. Chapman's Declaration and the "follow up" letter are still not enough to show more than a "mere possibility of abuse." *Gulf Oil*, 452 U.S. at 104.

The date of the "follow up" letter submitted by defendant with its Reply is March 4, 2015, about four months after defendant produced the contact information for putative class members to plaintiff on or about November 7, 2014, and shortly before March 26, 2015, when plaintiff filed the Motion for Permissive Joinder and Motion to Dismiss Class Claims. The title of the letter is "Best Buy Mobile SAS GM Class Action Overtime Case." [Doc. No. 52-1, at p. 6.] In the first sentence, the letter states that it is a "follow up" to a letter sent in December of 2014. [Doc. No. 52-1, at p. 6.] The contents of the "follow-up" letter indicate that it was sent for at least five different reasons. First, the "follow-up" letter provides an update on the progress of the action, stating, for example, that: "We have conducted substantial amounts of discovery over the last four months. . . . During this discovery we learned a lot of information that we believe supports your claim for unpaid overtime and other relief." [Doc. No. 52-1, at p. 6.]

---

[3] Ordinarily, Federal Courts do not consider "new evidence" submitted for the first time with a Reply unless the opponent is given an opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Second, the "follow up" letter provides updated information on the procedural posture of the case. Third, the "follow up letter" attempts to convince Mr. Chapman to contact plaintiff's counsel to pursue a claim. In this regard, the letter states as follows:

> Most importantly, however, during the past few months we had an opportunity to speak with the vast majority of SAS GMs personally (both on the phone and in-person meetings). The majority of the SAS Managers are excited to pursue their claims, and several dozen SAS Managers have retained [plaintiff's counsel] to pursue their claims on an individual basis. On the other hand, I also learned that there are a few SAS GMs who do not want to participate and who would not participate even in the event this case is certified as a class action.

> In light of the fact that so many SAS GMs have retained [plaintiff's counsel], we have decided not to pursue class certification of these claims. Instead, we intend to take steps to add the individual SAS GMs who have authorized us to present their claims for payment. . . . [W]e are capable of asserting each of your claims in the original case on an individual basis, as long as we have your authorization to do so.

> You are receiving this letter because you have not yet authorized us to proceed on your behalf. If you would like us to submit your claim with the other managers we currently represent, please contact us AS SOON AS POSSIBLE.

> Please contact me right away because we plan to take immediate steps to add the individual SAS GMs who have authorized us to assist them with the claims. . . .

[Doc. No. 52-1, at pp. 6-7.]

Fourth, the "follow up" letter includes a basic warning indicating there are "strict time limitations" (*i.e.*, the statute of limitations or other deadlines) for pursuing claims. The letter does not include any specific deadlines. Finally, the "follow up" letter includes "a brief explanation" as to how to calculate the value of a claim for lost overtime pay. [Doc. No. 52-1, at p. 7.]

Defendant contends in the Reply that Mr. Righetti's "follow up" letter to members of the putative class constitutes "blatant solicitation." [Doc. No. 52, at p. 3.] As a result,

1  defendant leaps to the conclusion that the letter proves Mr. Righetti misused contact
2  information for putative class members to improperly solicit clients to pursue individual
3  claims rather than to discover information to support a class certification motion. [Doc.
4  No. 52, at p. 3-4.] However, what defendant fails to consider is that written solicitations
5  are permitted under Rule 1-400(D) of the California Rules of Professional Conduct.
6  Therefore, even if the letter constitutes a "solicitation," it does not establish that
7  plaintiff's counsel violated Rule 1-400.

8          Nor does the letter prove that Mr. Righetti used contact information for putative
9  class members in an unethical manner to directly solicit new clients. As noted above,
10  Mr. Righetti's Declaration states that he contacted putative class members for the
11  purposes set forth in the Court's discovery Order of October 15, 2014 (*i.e.*, "to discuss
12  the issues pertaining to class certification"). Mr. Righetti's Declaration further states that
13  some putative class members "***requested*** more information about how to pursue a claim
14  (some did and some did not) . . . ." [Doc. No. 49-1, at p. 2 (emphasis added).] Once
15  again, neither this Court, nor the defendant, anticipated that plaintiff's counsel would
16  decide to pursue a course other than the filing of a motion for class certification after
17  contacting putative class members for investigative purposes. However, the Court
18  specifically permitted plaintiff's counsel to gather information from members of the
19  putative class to "test his class allegations" and determine "whether certification is
20  feasible." [Doc. No. 34, at p. 45.] Contrary to defendant's view of the record, the Court
21  did not intend to limit the options available to plaintiff's counsel in the event it was
22  determined based on information discovered from members of the putative class that
23  moving for class certification was not "feasible," for whatever reason. [Doc. No. 34, at p.
24  45.] Also contrary to defendant's view of the record, plaintiff's counsel did not
25  necessarily act unethically when he acquired new clients and then sought to join them as
26  additional plaintiffs to this action. *See, e.g., Rose v. State Bar*, 49 Cal.3d 659 (finding
27  that an attorney who directly contacts individuals for legitimate investigative reasons is
28  not barred from representing those individuals if requested to do so, but "it is misconduct

13cv2587-JM(KSC)

to directly solicit such employment"). Again, based on the facts and circumstances presented in defendant's moving and reply papers, defendant has only shown there is a "mere possibility of abuse." *Gulf Oil*, 452 U.S. at 104.

Defendant's Reply also attacks the credibility and integrity of Mr. Righetti's Declaration based on the content of the March 4, 2015 "follow up" letter. According to defendant, statements made in Mr. Righetti's Declaration are contradicted by information included in this March 4, 2015 "follow up" letter to Mr. Chapman. [Doc. No. 52, at p. 5.] For example, Mr. Righetti's Declaration states that he "never told anyone that this case 'was no longer a class action.'" [Doc. No. 49-1, at p. 3.] As noted above, the follow up letter states that: "[W]e have decided not to pursue class certification of these claims." [Doc. No. 52-1, at p. 6.] However, Mr. Righetti's statement that he and his client(s) have decided not to pursue a class certification motion is simply not the same as saying the case is no longer a class action. Even if no class is certified, the case was filed as a class action and will be considered a class action unless the class allegations are officially resolved or dismissed. Thus, no contradiction or inconsistency is apparent based on a comparison of these two statements. Contrary to other arguments in the Reply, the Court finds no significant contradictions between Mr. Chapman's Declaration and the March 4, 2015 "follow up" letter. [Doc. No. 52, at pp. 5-6.]

On the other hand, the March 4, 2015 "follow up" letter does raise some additional credibility concerns with the recitation of facts in Mr. Chapman's Declaration. For example, Mr. Chapman states in his Declaration that he received "a letter" from "a lawyer" who was suing defendant but he did not respond to the letter. [Doc. No. 45-3, at p. 2.] He also states he received "additional letters." [Doc. No. 45-3, at p. 2] However, he only provided one of these letters to the Court, and was apparently unable to provide this letter until it was time for defendant to file a Reply to plaintiff's Opposition. [Doc. No. 52-1, at pp. 5-7.] In addition, the contents of the March 4, 2015 letter suggest there was only one prior letter despite Mr. Chapman's assertion that he received "additional letters." [Doc. No. 45-3, at p. 2; Doc. No. 52-1, at p. 6 stating "[w]e previously sent you

a letter in December of 2014."] The contents of this letter further suggest that Mr. Chapman may be confused about the sequence of events and the timing of his receipt of written communications. Mr. Chapman's Declaration is dated April 27, 2015. [Doc. No. 45-3, at 3.] The letter Mr. Chapman received and provided to the Court is dated March 4, 2015. [Doc. No. 52-1, at p. 6.] Yet, Mr. Chapman's Declaration states he received a letter "[a] few months ago" and he "did not have any communication with that lawyer before receiving that letter." [Doc. No. 45-3, at p. 2.] In addition, on March 27, 2015, Mr. Chapman sent an e-mail to defendant's Human Resources Manager about "the lawyer" who "called" him, but at this time he did not mention receiving any letters. [Doc. No. 45-3, at p. 5.] His e-mail states only that he "received a few envelopes to fill out for the claim." [Doc. No. 45-3, at p. 5.]

Defendant also argues for the first time in the Reply that Mr. Righetti's letter of March 4, 2015 violates Rule 1-400 because it is "deceptive and misleading" for two reasons. First, the letter provides a formula to calculate a claim for unpaid overtime without mentioning defendant's "exemption defense." [Doc. No. 52, at p. 10.] Second, it communicates a "gratuitous air of urgency" by indicating there are strict limitations for presenting wage claims without mentioning that the statute of limitations is tolled while a class action is pending. [Doc. No. 52, at p. 11.]

It is true that Mr. Righetti's letter could have been more informative and balanced. However, based on the current record, the Court cannot find that the letter is so one-sided or unbalanced that it qualifies as a misleading or deceptive communication in violation of Rule 1-400. Notably, defendant does not seek the usual remedies for unbalanced or flawed communications with the putative class, such as a limitation on future communications and/or a curative notice to ensure putative class members receive a fair and balanced view of the case. *See, e.g., Gulf Oil*, 452 U.S. at 102 (indicating Federal Courts are authorized to "restrict certain communications in order to prevent frustration of the policies of Rule 23," but may not exercise this authority without "a clear record and specific findings" identifying "particular abuses" and any limiting order must be

"carefully drawn" to limit speech "as little as possible"); *Camp v. Alexander*, 300 F.R.D. at 619-627 (requiring curative notice and invalidation of opt-out declarations obtained by an employer in response to a one-sided letter discouraging employees from participating in a wage and hour class action by suggesting litigation costs could jeopardize the viability of the business so employees might lose their jobs but declining to place a "complete ban" on communications with the putative class about the case). Instead, defendant seeks harsh sanctions that, if granted, would further delay a resolution of the case on the merits by requiring additional discovery, an evidentiary hearing, and/or new counsel for plaintiff. Together, the type and scope of the requested sanctions, along with the weak evidence submitted in support of the request, are enough to suggest to the Court that defendant's Motion is motivated more by litigation tactics than a desire to address any claimed prejudice or to ensure a rightful decision of the case.

### *IV.   Conclusion*

"[W]hether by plaintiffs or defendants," direct communications with class members prior to class certification can result in abusive conduct.[4] Manual for Complex Litigation, § 21.12 (4th ed. 2004). Here, it is evident that both parties have had access to members of the putative class over a substantial period of time. Defendant has had greater access since plaintiff was not provided with any contact information until the Court's Order of October 15, 2014, even though the case has been pending since the original Complaint was filed in state court on August 2, 2013.

It is also evident that both parties have directly communicated with members of the putative class. As noted above, plaintiff's counsel readily admits in his Declaration that

---

[4]    "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003).

he has had a number of "discussions" with members of the putative class. [Doc. No. 49-1, at pp. 2-3.] The record also shows that defendant has had direct contact with putative class members. Defendant and/or its counsel interviewed employees or former employees who are members of the putative class. [Doc. No. 40-1, at p. 4.] These contacts resulted in declarations by ten individuals. Defendant provided plaintiff's counsel with copies of these declarations as part of a supplemental disclosure. [Doc. No. 40-1, at pp. 4, 84-91.] According to plaintiff's counsel, "[n]one of those 10 individuals seek to join this case." [Doc. No. 40-1, at p. 4.]

Based on the foregoing, it is also evident that both parties achieved some favorable results as a result of communications with members of the putative class. From the evidence presented, two opposing inferences can be drawn as to either plaintiff or defendant. The results of these contacts could have been achieved through ethical or unethical/abusive conduct. In other words, based on the totality of the circumstances as presented, including the Declaration of Mr. Chapman and the credibility issues it raises, the Court will not leap to the conclusion that plaintiff's counsel engaged in abusive or unethical practices. Just as defendant could have ethically obtained declarations from ten members of the putative class to agree not to participate in this litigation, plaintiff could have ethically acquired authorization from other members of the putative class to pursue individual claims by joinder when, for whatever reason, it was determined by plaintiff's counsel that it would not be in the best interests of his client(s) to file a class certification motion.

Under the Supreme Court's decision in *Gulf Oil*, the Court can only take remedial or corrective action based on "a clear record and specific findings." *Gulf Oil*, 452 U.S. at 101. The record here is insufficient for the Court to make any specific findings of abusive or unethical conduct. The "mere possibility" of abusive tactics is simply not enough. Nor is the "mere possibility" of abusive tactics sufficient to justify the time and expense of the additional discovery and evidentiary hearing that would be necessary for the Court to be able to make specific findings. This time and expense based on a "mere

possibility" would be particularly unjustified in a case that has now been pending for more than two years [Doc. No. 1-2, at p. 3] and is still in a preliminary phase because of discovery disputes and other delays. Rather than extending and further delaying the litigation to clarify the record one way or the other, it is time for both parties to focus on the merits and to bring the case to trial or settlement.

For the foregoing reasons, the Court finds that defendant's Motion for Sanctions and Disqualification must be DENIED. The Court also finds that the parties' requests in the moving and opposing papers for additional discovery to resolve whether there was any improper solicitation or unethical conduct during communications with putative class members must also be DENIED. The case must proceed on the merits.

Dated: November 13, 2015

Hon. Karen S. Crawford
United States Magistrate Judge